Thank you, Your Honors. Good morning. Amy Cleary on behalf of Julian Castro. I'd like to reserve two minutes for my rebuttal and I will watch the clock. This appeal follows Mr. Castro's guilty plea without a plea agreement and the District Court's decision to sentence him with the four-level enhancement under 2K2.1 and the decision to strike the acceptance of responsibility reduction despite his timely plea. I'd like to focus on two issues this morning. The District Court's improper application of the relevant conduct guidelines to apply the enhancement and the decision to find that the legal arguments Mr. Castro's attorney made were frivolous. With regard to the enhancement, Mr. Castro's attorney made due process arguments that the District Court and the government agreed were appropriate. Those due process arguments added information to the PSR that the government ultimately said created credibility problems in deciding whether the District Court could rely on the girlfriend's statement that Mr. Castro had pandered her in the past. When we have the government conceding, as we do in this case, that there are credibility problems, that did not mean that Mr. Castro frivolously contested the victim's statement. What it meant was is that the government agreed with Mr. Castro that those were things that the District Court could not rely on. Counsel, let me ask you this. In denying Castro his two-level reduction for acceptance of responsibility, the District Court specifically found frivolous the argument that Castro was not still pandering at the time the gun was found. Isn't that the kind of factual determination that we review only for clear error? While factual findings by District Court are reviewed for clear error, Your Honor, the difficulty we have is that the government abdicated any reliance on the conduct prior to Mr. Castro's arrest as being relevant conduct under the guidelines. Does that matter? This is the judge making the decision, the judge purported to go by the guidelines. Whether the government agrees or not, isn't the judge entitled to make a determination that we, in terms of factually, we review it for clear error? In this case, no, Your Honor. And I say that because the government has an obligation when an enhancement is objected to, to come forth with evidence that the District Court can find reliable and can use that to apply the enhancement. Here, the government said, Judge, none of that is relevant conduct under the guidelines. In fact, the government led the District Court astray by saying, Your Honor, it can still be conduct that is relevant even if it doesn't fall under 1B1.3. There's no law, there's no guideline that allows that to occur. But just to, I mean, it was a little confusing about what the government had to say on this below, but your position, I just want to understand it, because here he was, he was found, the gun was found on June 29th, 2022. So is your position that anything that occurred before that just couldn't be considered? That was what the government conceded, so yes. Well, what's your position on that? Yes, absolutely. Okay, but why would that be right? Because why wouldn't it be the case that if he had engaged in a pattern of pandering in the past, that could be relevant to whether he was engaging in pandering at the time the gun was found? But the government decided that it was not going to try and prove that those things actually occurred. So it wasn't going to try and prove that the conduct on the 9th and the 10th actually occurred. It wasn't going to prove, Mr. Castro admitted he was attempting to pandering on the 16th, but it wasn't going to try and prove that he had a gun in his car or on his person or in any way related to that discussion with the undercover officer. So what we have is the government said to the Court, none of that counts. When that occurs, and what the government ultimately argued after defense counsel made objections is we believe that he was going to pander in the future. So what that required the government to do is show that there was a firm intent to not only pander in the future, but to use a firearm to do so. The difficulty here is when the government decides it is not going to put forth proof. The district court has nothing to base that decision on. And that's what occurred here. But why wouldn't we? Wasn't that in the PSR? Wasn't that information in the PSR? It was, Your Honor, and once the PSR was corrected to bring forth information that the victim was hearing voices, the victim was under the influence, and that the undercover officers claimed that Mr. Castro said he had a gun in the car couldn't be heard on the recording. That all brought to the front, I think, the reason why the government walked away from that evidence as something that it could rely on for the enhancement. I get your point about the government. But, again, what you seem to be saying is that the district judge cannot, could not rely on what was in the PSR and the statement of the young woman in this case earlier that this guy was involved, your client was involved in a pattern of pandering. I find that an unusual position, and I don't know where you back that up with case law. Your Honor, if this was a matter of law and the government put forth an erroneous version of the law, I don't think that this court would be bound by that. But when the government relies on facts and says we are not going to prove these facts, we don't have to prove these facts, we won't prove these facts, then there is nothing for the district court to rely on. But even if there had been, the bigger problem here, and one that I think that will chill defendants going forward, is the violation of the Fifth and Sixth Amendment rights for defense counsel to make legitimate legal arguments without the fear of having the acceptance of responsibility reduction taken away from them. That's exactly what occurred here. Just because the district court didn't buy the argument by defense counsel did not make them frivolous. What seemed like what the district court was troubled by was the denial of engaging in pandering when there was a lot of evidence that the defendant did engage in pandering. And it seemed that that was what was troubling the court were the suggestions or representations that this was not conduct he engaged in when in fact it seemed pretty apparent that he was engaged in that. I would disagree with that, your Honor. Mr. Castro admitted that when he was with the undercover officer he was attempting to pander. Mr. Castro said nothing about the June 9th and June 10th incident with his ex-girlfriend. What he did was ask, his counsel put forth information that led the government to agree that there was problems with her credibility. The government agreed. Mr. Castro denied nothing. When we have no testimony, no statements, no denials, and that's on 1 ER 99, all this was was defense counsel making legal arguments. That cannot be the basis of denying the acceptance of responsibility reduction. And I'd like to reserve the rest of my time if there's no further questions. Okay, thank you. Good morning. May it please the Court. Peter Walkingshaw on behalf of the United States. The district court in this case did not abuse its discretion in concluding that the defendant possessed this firearm in furtherance of a plan in the future to pimp women in the Las Vegas area. Nor did it abuse its discretion in concluding that the defendant's contesting the application of this enhancement was inconsistent with his clear acceptance of responsibility for conduct that comprised the offense, which is his burden to prove. Now, unless there are many any immediate questions from the Court, I'd like to begin by hopefully clarifying what the government meant by earlier conduct is not, quote, relevant conduct under the guidelines. I believe this is most clearly explained in the record at page 271 in the government's surreply with respect to the sentencing memo. But just to summarize in brief, the defendant's attempts to pimp women on June 9th and June 16th are not, quote, relevant conduct in the sense that they cannot, as an independent basis, be used to enhance the defendant's sentence for possessing a gun on June 29th. Because he could not have possessed the gun in order to facilitate crimes that have already occurred. So 2K1.1 obviously can't apply in that particular instance. So they're not relevant conduct in that sense. But they're certainly relevant in the sense that we ordinarily discuss relevance as lawyers, in the sense it's put forth in, for example, Federal Rule of Evidence 401. It's evidence that tends to make a material fact more or less likely. And in this case, the fact that the defendant was reportedly pimping his girlfriend on June 9th, that he was recorded attempting to pimp an undercover on the 16th, and that recording just — there was some discussion of, you know, what was or wasn't proven or represented at the sentencing hearing. That video — pardon me — that audio was submitted to the court and it was played in open court at the sentencing. So it's not as if there's no underlying basis as to what went on here. Those are clearly relevant in the sense that they tend to establish what the defendant's plan was when he was arrested with the gun on the 29th. And those events are added to the evidence that was found when detectives searched both his residence's cars. So we found the gun itself, notes regarding how to press women into prostitution, false identity documents, including credit cards, which was discussed with the undercover as a means through which she could use ride shares without creating a paper trail for her prostitution activities. So when combined with what was found in the apartment, it's very clear that there was an ongoing plan that was corroborated by the evidence from what happened before the date of the arrest, that this defendant had a plan to pimp women in the Las Vegas area and that that plan was ongoing. It's clearly what the district court relied upon when it made its determination. I believe it's page 88 of the record in which the district court said there's plenty of evidence that he's engaged in pandering in the present as well as in the past and that he hasn't quit. That's the basis for the district court's application of this enhancement. What were the nature of the handwritten notes that were found at the apartment? I apologize, Your Honor. I don't have anything more than what's said in the record in the PSR. I think, honestly, the PSR pretty much — Because the notes are not themselves in the record? They are not, Your Honor. And I — for that, I can only apologize. But the way in which they're — there was some dispute at the sentencing hearing as to whether or not it could be accurately described as a ledger. I believe it's been characterized a few different ways in the sentencing hearing, but basically it's — I believe it was referred to one time as a how-to guide. It's basically advice as opposed to — Does the document exist in some record or is it merely just a report of the existence of the document? I mean, I believe it was seized as pursuant to the search, but it is not within the district court record. It was not offered at sentencing, Your Honor. So the — it was not disputed, so the contents of it were in the PSR, and they were — I think they were objected to as a ledger, but its characterization in the PSR was not objected to as its — in its final form. On the denial of acceptance of responsibility, your opposing counsel says basically, well, you know, even if we were wrong about this argument, it wasn't a frivolous argument, and so we shouldn't be losing acceptance of responsibility based on just advancing a legal argument, even one that fails. So how do you address that? I have to respectfully disagree, Your Honor. I think — and, you know, defining frivolity I think is a — is a difficult matter, but in this case, the defendant's objection to this enhancement really hinges on large — in large part on an assertion that nothing before the 29th could be considered as relevant, that it is not relevant that he was trying to pimp women in the few weeks preceding his arrest and the police finding the gun in his car, which I believe was, you know, the subject of much of contesting of the — the undercover's report. It wasn't audible in the — in the audio recording that he had said, I keep the gun in my car. That's where the gun was ultimately found. So I gather the government's position is, in response to your friend's comments, that although the — I guess the 9th and the 16th are not relevant because — well, first of all, the arrest occurred with respect to a later one, but based on that, based on the audio, based upon what was found in the apartment and things that occurred thereafter, the perspective and show that the district court had something legitimate on which to rely. Is that correct? That's certainly correct. All of the evidence in this case points toward this defendant engaging in unrepentant pimping during this entire period. And so for the defendant to confess — to contest it and then say, not only is there not a sufficient nexus, but you can't consider anything before the 29th, it is irrelevant what I was up to on the 16th when I had — Well, but perhaps part of his basis for that was some of the confusion introduced by the government's distinctions about what's relevant conduct and what's conduct that is relevant. Well, Your Honor, I would say that with respect to that, I believe it was the defense that introduced this concept. So the government — I believe I pointed the court to page 271. That was something the government said in response to the defendant's representation that this is not relevant. So it's not as though — while I understand that, for lack of a better term, there's a little bit of a who's on first routine. There's multiple meanings of the word relevance. While sometimes that does come up in legal interpretation and legal arguments, I think whether or not it's relevant in the ordinary sense was contested in the first instance by the defense. And there is simply no basis to do that. It is plainly irrelevant what the — what was on the defendant's mind on the 9th and on the 16th when he was attempting to pimp these women when trying to figure out whether or not he had a firm intent to engage in pandering on the 29th when he was arrested. So with respect, Your Honor, I do not think it would be correct to say that the government sort of introduced this idea. It clearly came from the defense. So you're saying basically it's relevant but it's not relevant conduct. Is that your argument? Well, it is — it is not — I apologize, Your Honor. Obviously, there's more than one sense of relevance. It is — it is relevant in the ordinary sense. Right. So is it — the government's position is it's not relevant conduct in the legal sense? It's not — and I believe this is how it's said every time. It is not relevant conduct with respect in the sense in which that phrase appears in 1B1.3. But that is the only extremely limited sense in which it's not relevant. I tell you, you're — what you're — I think you're saying is that we're not imposing any kind of enhancement based on — on something that happened prior to the time he had the gun. We're using the conduct from earlier to inform what — what we think he's going to do going forward. Exactly it, Your Honor. And I think that's, you know, a reasonable ordinary method of proof for a defendant's state of mind. You know, a defendant's state of mind is rarely susceptible through direct — susceptible proof through direct means. It's almost always taken from the circumstances. And so this is sort of a meat-and-potatoes method of determining what was going on in his mind when the Unless there are other questions, I'm happy to spend my time with the Court. Great. Thank you very much. Your Honors, the government's position would make any enhancement applicable outside of 1B1.3. That's not what the Sentencing Commission sets out. If it is not legally relevant under 1B1.3, which the government, when defense counsel submitted an objection, said that we think that there's a problem because there's a nexus problem, the government said, we agree, there's nothing relevant. With regard to the acceptance responsibility, at the very least, if this Court finds the enhancement was appropriate and that this novel, relevant conduct can be applied, the district court still had to weigh all Mr. Castro's other evidence of him accepting responsibility. And we know that did not happen because the district court didn't address any of that and actually denied the acceptance responsibility for Mr. Castro allocated. And in United States v. Green, this Court made clear that if you — even if there's inconsistent conduct that could be considered different than acceptance of responsibility, there still needs to be a weighing of the timely plea, the assistance to authorities, the post-offense conduct, the allocution. None of that occurred here. For those reasons, Your Honor, we would ask that this Court reverse the district court's application of the enhancement because it is on — based on improper relevant conduct principles and reverse its denial of acceptance responsibility. Thank you very much. Thank you. We thank both counsel for the helpful briefing and argument. This case is submitted.
judges: THOMAS, SMITH, BRESS